NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| EAST ORANGE BOARD OF EDUCATION, : : Plaintiff, : : v. : : E.M., on behalf of J.B., : : Defendant. : : | Civil No. 08-4778 (SRC) OPINION |

**CHESLER**, District Judge

This matter comes before the Court upon the parties' motions for summary judgment [docket entries 20 & 21]. The Court has considered the papers submitted by the parties in connection with the instant motions, and pursuant to Federal Rule of Civil Procedure 78, rules without oral argument. For the reasons discussed below, the Court denies Plaintiff East Orange Board of Education's motion for summary judgment [docket entry 20] and grants in part and denies in part Defendant E.M.'s motion for summary judgment [docket entry 21].

**I.    Background**

E.M. is the parent of J.B., a minor child who is classified as a student eligible for special education and related services under the category of Specific Learning Disability. In May 2007, the Greater Newark Charter School ("GNCS") determined that it could not provide an appropriate education for J.B., then a resident of Newark, as required under his Individualized

Education Program ("IEP"). GNCS developed an IEP for out of district placement and the Newark School District accepted financial responsibility. J.B. attended North Hudson Academy, a private school for students with learning disabilities located in North Bergen, New Jersey. At no point did the Newark School District contest the placement of J.B. In August 2007, E.M. and J.B. moved from the City of Newark to the City of East Orange. The East Orange Board of Education offered E.M. various in-district programs, which E.M. refused, instead requesting transportation from East Orange to North Hudson Academy.

On October 18, 2007, E.M. filed a Petition for Due Process which sought to have the East Orange Board Of Education cover expenses associated with J.B.'s placement at North Hudson Academy. The matter was transmitted to the Office of Administrative Law. On June 26, 2008, the Honorable Leslie Z. Celentano, Administrative Law Judge ("ALJ"), issued a Final Decision, which held, in part, that J.B. was not enrolled in the East Orange School District for the 2007-2008 school year and that J.B.'s placement at North Hudson Academy was appropriate and consistent with the IDEA. (Li Cert. Ex. D) The ALJ's decision, relying largely on Garfield Bd. of Educ. v. T.C. and D.C. & Bergen Arts & Sci. Charter Sch., EDS 3508-08, Final Decision (May 7, 2008), concluded that "East Orange has no authority to prevent J.B. from enrolling and/or remaining in the GNCS, and therefore can not be afforded any relief in an IDEA due process hearing . . . and this tribunal is not the proper forum to challenge J.B.'s placement and/or costs."

On July 3, 2008, counsel for E.M. wrote counsel for the Board seeking reimbursement from the Board of all expenses incurred by E.M. for transportation during the 2007-08 school year and requesting that the Board bear any such expenses for the 2008-09 school year. Counsel

for the Board responded that the ALJ's decision did not speak to the financial or transportation responsibilities of the Board and, consequently, no such relief would be provided. Subsequently, E.M. requested that the ALJ provide clarification as to whether the Board "is financially responsible for J.B.'s placement in and transportation to North Hudson Academy." (Li Cert. Ex. G.) No response has been provided by the ALJ. On September 24, 2008, the Board initiated the instant matter, seeking an appeal of Judge Celentano's decision. On March 12, 2009, E.M. filed its answer and counter-claims.

This matter was also the subject of a related administrative proceeding filed by E.M. in the Office of Administrative Law. Because E,M. and J.B. had subsequently moved to North Carolina, E.M. was ultimately directed by the Honorable Imre Karaszegi to submit a brief as to why the Petition should not be dismissed for mootness. On July 30, 2010 Judge Karaszegi, although holding that the issues properly before him were moot, stated that "[i]f petitioner's claim is, that by not providing transportation to J.B. to NHA, the East Orange Board of Education "failed in its duty" to provide a Free and Appropriate Public Education (FAPE), a due process hearing within the framework of the Individuals with Disabilities Education Act (IDEA) would be the principal vehicle for resolving [such a dispute]." E.M. o/b/o J.B. v. East Orange Bd. of Educ., et al., OAL Docket No. EDU 11588-08 (July 30, 2010). As will be discussed, the parties, however, did properly bring this issue before ALJ Celentano. As essentially an appeal of ALJ Celentano's Opinion, the issue of transportation expenses is properly before this Court.

## II.     Analysis

### A.     Mootness

The Board claims that all counter-claims asserted against it should be dismissed as the

controversy is now moot since, as of April 7, 2009, E.M. and J.B. are residents of North Carolina and there is no indication that E.M. bore expenses due to the Board's actions. (Li Cert. Ex. P.) In response, Defendant/Counterclaimant, E.M. asserts that the Board should bear the costs of J.B.'s placement and transportation services and that the ALJ decision should be upheld in its entirety.

The Board argues that all controversies in this case have long been moot and, therefore, all counter-claims should be dismissed. It is well settled that Article III of the Constitution requires that any cause of action before a federal court must involve a live case or controversy. DeFunis v. Odegaard, 416 U.S. 312, 316 (1974). As E.M. and J.B. are now residents of North Carolina, the Board argues that the case has become moot. Mootness occurs "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." Powell v. McCormack, 395 U.S. 486, 496 (1969). The Board argues that as J.B. was never dismissed from North Hudson Academy, nor does he continue to face any threat of dismissal (given that he voluntarily left the state), the issue of dismissal is moot. The Court agrees that the issue of dismissal is now moot.

The Court, however, must determine if any justiciable controversy still remains. The Board argues that Defendants have not demonstrated that any of the tuition was paid by Defendants, thereby rendering moot the issue of any tuition reimbursement. Defendants concede that E.M. did not pay any portion of the tuition. The issue of transportation reimbursement, however, presents a live and justiciable controversy. The mere fact of transfer does not

extinguish this claim.[1] Hiller v. Bd. Of Educ. Of Brunswick Cent. Sch. Dist., 687 F. Supp 735, 739 (N.D.N.Y 1988) (plaintiff not precluded from seeking reimbursement "simply because the [parents] moved [the student] from the district); S.N. v. Old Bridge Twp. Bd. Of Educ., No. 04-517 2006 WL 3333138, at *1 (D.N.J. 2006) (a student's transfer to another district does not necessarily preclude "declaratory and injunctive relief and compensatory and punitive damages.") According to Defendant, she directly paid for various transportation expenses. From September 2007 until April 2009, E.M. transported J.B. from their home in Essex County to the private school placement in Hudson County. (Canty-Barnes Cert. Ex. B.) Thus the Court must determine if the ALJ made appropriate findings and if Defendant is entitled to transportation reimbursement.

---

[1] E.M. does have standing to bring these claims. While the general rule is that a party may not bring suit on behalf of a third party, there are applicable statues and exceptions which permit the instant action. First, a guardian may sue on behalf of a minor. Fed. R. Civ. P. 17(c)(1)(A)-(D). Moreover, the IDEA establishes a private right of action in any party, "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education. . . ." 20 U.S.C. § 1415(b)(6)(A); Winkelman v. Parma City Sch. Dist., 550 U.S. 516, 529 (2007) ("IDEA includes provisions conveying rights to parents as well as to children."). Relatedly, E.M. has appropriately exhausted administrative remedies. The IDEA requires "an aggrieved party [to] invoke a State's administrative procedures before bringing an IDEA claim in state or federal court." Jeremy H. by Hunter v. Mount Leb. Sch. Dist., 95 F.3d 272, 281 (3d Cir. 1996). Here, the record demonstrates that administrative procedures were exhausted. J.B. filed a due process complaint, which was ruled upon by Judge Celentano. This Court now has jurisdiction to review the decision. Individuals who believe that their rights under the IDEA have been violated are permitted to bring a civil action in federal court. See 20 U.S.C. § 1415(i)(2). To resolve these claims, the IDEA permits a court to "grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C)(iii). Ferren C. v. Sch. Dist. of Phila, 612 F.3d 712 (3d Cir. 2010). Courts have "the power to order school authorities to reimburse parents for their expenditures on private special education services if the court ultimately determines that such placement, rather than a proposed IEP, is proper under the Act." Ferren C., 612 F.3d at 718, citing Sch. Comm.of Burlington v. Dep't of Educ., 471 U.S. 359, 369 (1985).

### B. Scope of the ALJ Decision

The Board first argues that Judge Celentano erred by deciding issues that were outside the scope of the Petition for Due Process. In reviewing legal decisions by an Administrative Law Judge, this Court will apply a de novo standard of review. L.M. v. Evesham Twp. Bd. of Educ., 256 F. Supp. 2d 290, 294-95 (D.N.J. 2003). Factual findings are subject to a modified de novo standard. S.H. v. State-Operated Sch. Dist. of City of Newark, 336 F.3d 260 (3d Cir. 2003).

In short, the Board argues that courts should not rule upon issues not presented in the administrative proceeding due to the fact that it would have insufficient opportunity to defend itself. See, e.g., Winkelman v. Parma City School, 411 F. Supp. 2d 722, 728 (N.D. Ohio 2005). Among the statutes which govern administrative proceedings in New Jersey's Office of Administrative Law, is N.J.S.A. 52:14B-9(a), which provides that "the parties shall be afforded an opportunity for hearing after reasonable notice." Notice, under sub-section (b), "shall include in addition to such other information as may be deemed appropriate: . . . (4) a short and plain statement of the matters asserted . . .[or] . . . a statement of the issues involved." The IDEA, itself, also places limitations on the issues to be raised during the due process hearing. For example, under section 1415(b)(7)(B), "the party requesting the due process hearing shall not be allowed to raise issues at the due process hearing that were not raised in the notice filed under subsection (b)(7) . . ."

The Board asserts that the sole issue raised in the Petition for Due Process, and consequently the sole issue to be appropriately decided by ALJ Celentano, was whether the East Orange Board of Education bore the responsibility for providing J.B. with transportation to North Hudson Academy. The Board asserts that Judge Celentano's findings that (1) J.B. was not

enrolled in the East Orange School District for the 2007-2008 school year; (2) that J.B.'s placement at North Hudson Academy was appropriate and consistent with the IDEA; and (3) that the proceedings were governed by the Charter School Program Act, N.J.S.A. 18A: 36A-1 are outside the scope of the issues presented and should be vacated.  Furthermore, the Board argues that "not only did Judge Celentano go beyond the limited scope of the issue raised in the Petition for Due Process, she also did not actually render any conclusion as to the one issue actually in dispute: transportation."  (Pl.'s Br. in Supp. of Summ. J. at 31 n.1.)

      The first contested issue is whether the appropriateness of J.B.'s placement at the North Hudson Academy was properly before the ALJ.  This issue was raised by the District in its motion to dismiss E.M.'s due process complaint.  (Canty-Barnes Cert. Ex. E.)  Moreover, this, as with all the contested issues, was either a necessary or appropriate finding in support of the request regarding reimbursement.  In other words, as Defendant suggests, it was entirely appropriate for the ALJ to discuss J.B.'s placement at the North Hudson Academy when asked to rule on the appropriateness of transportation expenses.

      Relatedly, ALJ Celentano was permitted to make the determination that J.B. was not enrolled at the GNCS.  The District raised J.B.'s status at GNCS in conjunction with the argument that J.B.'s IEP was deficient.  (Canty-Barnes Cert. Ex. E.)  Not only was this argument raised by the District, but it was logically and appropriately considered by the ALJ in connection with the central issue of transportation expenses.  In other words, determining the appropriateness of the IEP and the place of enrollment, are appropriate steps in determining the related issue of transportation expenses.

      Lastly, the Court also finds that the ALJ's determination that the proceedings were

governed by the Charter School Program Act, N.J.S.A. 18A: 36A-1 was within the scope of the issues presented. In short, a determination of the applicable law is an appropriate first step in rendering any substantive decision.

### C. Transportation Expenses

The fundamental issue is whether the Board is responsible for the transportation expenses and, if so, what is the appropriate forum for such a determination. The ALJ's decision, relying largely on Garfield Bd. of Educ., EDS 3508-08, concluded that "East Orange has no authority to prevent J.B. from enrolling and/or remaining in the GNCS, and therefore can not be afforded any relief in an IDEA due process hearing . . . and this tribunal is not the proper forum to challenge J.B.'s placement and/or costs."

The standard of review that a district court must apply in a civil action challenging an administrative decision has been described as "unusual." Shore Reg'l High Sch. Bd. of Educ. v. P.S., 381 F.3d 194, 199 (3d Cir. 2004). An action brought under the IDEA requires the district court to conduct a "modified *de novo* review." S.H. v. State Operated Sch. Dist. of City of Newark, 336 F.3d 260, 270 (3d Cir. 2003); Susan N. v. Wilson Sch. Dist., 70 F.3d 751, 757 (3d Cir. 1995).

The ALJ incorrectly concluded that the East Orange Board could not be afforded relief in an IDEA due process hearing and that "this tribunal is not the proper forum to challenge J.B.'s placement and/or costs." In fact, the relevant language of the statute states:

> Within 15 days of the signing of the individualized education plan, a charter school shall provide notice to the resident district of any individualized education plan which results in a private day or residential placement. The resident district may challenge the *placement* within 30 days in accordance with the procedures established by law.

N.J.S.A. 18A:36A-11(b) (emphasis added).  ALJ Celentano relied primarily on <u>Garfield Bd. of Educ.</u>, EDS 3508-08.  In <u>Garfield</u>, the resident district refused to pay for a private placement decided upon by a charter school.  The court held that in such a case, the appropriate course of action is an appeal before the Commission of Education, not a due process hearing under N.J.A.C. 6A:14-2.7, "which plays no role in situations such as here when a student is enrolled in a charter school but the resident board retains fiscal responsibility for that child."  Further, ALJ Celentano held that a "clear line exists between the responsibility to provide a meaningful education pursuant to federal law and the responsibility to finance a meaningful education under state law."  This Court disagrees.

The relevant statute, N.J.S.A 18A:36A-11(b), clearly contemplates providing the school board of the resident district the right to challenge the placement of the student.  It is clear that at the time of the dispute the resident school district was East Orange.  A dispute arose between the student and the East Orange Board regarding proper "placement."  ALJ Celentano concluded that the issue of financial responsibility was somehow divorced from the issue of providing an appropriate IEP, and, consequently, the issue of financial responsibility in this case could not be challenged via a due process hearing.  The Court is not satisfied that this is indeed the case.  As discussed, the statute explicitly gives the Board the right to challenge the placement promulgated by a charter school.  To allow a board to challenge the placement of a student, but not the ancillary services and financial responsibility related to such placement, is a notion unsupported by the law and logic.  The Court holds that the School District is a party who possesses the right to "present a complaint with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such

9

child." 20 U.S.C. § 1415(b)(6)(A).

Under New Jersey law, when a disabled student attends a charter school, that school is responsible for developing a proper IEP. L.Y. o/b/o J.Y. & Elysian Charter Sch. of Hoboken v. Bayonne Bd. of Educ., 2010 WL 2340176, at *2 (3d Cir. June 10, 2010) citing N.J. Stat. Ann. Section 18A:36A-11(b). The resident school district, however, bears financial responsibility when the IEP calls for placement at a private school. Id. Here, Defendant had a valid IEP established by the charter school at the time he moved to East Orange. East Orange, the financially responsible party, disputed the existing IEP and proposed alternative programs. Subsequently, J.B. filed a Petition for Due Process seeking reimbursement and expenses from East Orange. The IDEA states that "during the pendency of any proceedings . . . the child shall remain in the then-current educational placement of such child. . . ." 20 U.S.C. § 1415(j). Thus, the so-called "stay-put" provision of the IDEA requires that while the propriety of a prosed IEP, calling for a changed placement, is being litigated, the child is entitled to continue in his current school. Accordingly, the appropriate placement for J.B. remained North Hudson Academy.

The ALJ decision also concluded that J.B.'s placement at North Hudson Academy was appropriate and consistent with the IDEA. This Court agrees. J.B. was enrolled at the North Hudson Academy from May 2007 until April 2009. It is undisputed that J.B. was placed in North Hudson Academy by GNCS, the agency responsible for implementing J.B.'s federal and state special education requirements. While the District was required to bear the cost of J.B.'s education under the IDEA after he became a resident, it refused to pay for his "then-current educational placement."

The IDEA authorizes the Court to grant the prevailing party "such relief as the court

determines is appropriate" to remedy the deprivation of a FAPE. 20 U.S.C. § 1415(i)(2)(C)(iii); Ferren C., 612 F.3d at 717.  The statute, however, gives no indication as to what type of relief may be appropriate and in what circumstances it should be ordered.  Id.  Thus, courts deciding IDEA issues have developed a body of jurisprudence as to what relief is available and appropriate.  Id. at 717-18.  Furthering the purposes of the IDEA serves as the guiding principle in fashioning equitable relief.  Id. at 717.  A court must consider all relevant factors, meaning that the remedy should be tailored to the particular circumstances and deprivations a case may present.  Id. at 718.  The Third Circuit has observed that a district court has broad discretion with regard to ordering relief under the IDEA, discretion that the Supreme Court has declined to limit.  Id. citing Sch. Comm. of Town of Burlington, Mass v. Dep't of Educ. of Mass., 471 U.S. 359 (1985) and Forest Grove Sch. Dist. v. T.A., 129 S.Ct. 2484 (2009).

  As for reimbursement, it is well-established that the Court's remedial authority under the IDEA includes the power to order school authorities to reimburse parents  "if the court ultimately determines that such placement, rather than a proposed IEP, is proper under the Act." Burlington, 471 U.S. at 369.  Though consisting of a monetary award, it is an equitable remedy in the nature of restitution for expenses the school district "should have paid all along and would have borne in the first instance had it developed a proper IEP."  Chambers v. Sch. Dist. of Phila., 587 F.3d 176, 184 (3d Cir. 2009) (quoting Burlington, 471 U.S. at 371.)

  Given this context, the Court finds that it is equitable and appropriate to reward transportation expenses in this case.  Under the IDEA, transportation services are considered a "related service" that "may be required to assist a child with a disability benefit from special education." 20 U.S.C. § 1401(26)(A).  Once there is state agreement with respect to placement,

the local district may bear financial responsibility. As the Board was the resident district of a disabled child subject to the stay-put provision, the Board was responsible for these expenses. Chambers, 587 F.23 at 184 (quoting Burlington, 471 U.S. at 371.) Reimbursement is, however, subject to equitable considerations, and the Court need not award private school expenses that are unreasonable. Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 248 n.7 (3d Cir. 1999).

Plaintiff asserts that E.M. is not entitled to transportation costs because: 1) by virtue of attendance at North Hudson Academy, J.B. could not have been attending the Greater Newark Charter School and 2) his Individualized Education Plan did not require (or even mention) transportation. First, the fact that Judge Celentano analyzed the underlying decision under the Charter School Act, does not bar this Court from ordering appropriate remedies under the IDEA. The Court is not satisfied that J.B. must attend a charter school to be entitled to transportation costs.[2] Here, J.B. appears to have been "enrolled" in the GNCS, but "attended" North Hudson Academy. This distinction does not bar J.B. from obtaining transportation costs. J.B. is entitled to reasonable transportation costs under the IDEA, which contains a broad, equitable remedial scheme. The IDEA authorizes the Court to grant the prevailing party "such relief as the court determines is appropriate" to remedy the deprivation of a FAPE. 20 U.S.C. § 1415(i)(2)(C)(iii); Ferren C., 612 F.3d at 717. Furthermore, the Court does not agree that an IEP must explicitly reference transportation costs. J.B.'s IEP includes a reference to "related services," which, as

---

[2] Plaintiff asserts that, under N.J.A.C. 6A:27-3.2, "[s]tudents in kindergarten through grade eight who reside more than two miles and students in grades nine through 12 who reside more than two and one-half miles *from the charter school in which they attend* are eligible for transportation services." (emphasis added).

defined under the IDEA includes "transportation, and other such developmental, corrective, and other supportive services . . . ." 20 U.S.C. § 1401(26)(A).  Thus, the Court will entertain a further submission by Defendant, properly supported by affidavit(s) and any pertinent documentation, detailing the nature of the transportation expenses for which reimbursement is sought.

### D. Remaining Claims

Finally, as summary judgment has been granted in favor of Defendant with regard to the IDEA claim, and all other claims and requested relief are duplicative and therefore subsumed within that, the remaining counter claims are dismissed as moot.

## III. Conclusion

For the foregoing reasons, the Court denies Plaintiff East Orange Board of Education's Motion for Summary Judgment [docket entry 20] and grants in part E.M.'s motion for summary judgment [docket entry 21].  An appropriate form of order will be filed together with this Opinion.

                                                   s/ Stanley R. Chesler  
                                                 Stanley R. Chesler, U.S.D.J.

Dated: February 17, 2011